UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JULIE FRAZIER BROWN                         CIVIL ACTION NO. 19-cv-0346

VERSUS                                       MAGISTRATE JUDGE HORNSBY

CINEMARK USA, INC

**MEMORANDUM RULING**

**Introduction**

Julie Brown and her husband attended a movie at the Tinseltown theater in Shreveport. Mrs. Brown fell on the stairs inside an auditorium and suffered severe injuries to her knee. She filed this suit against Cinemark USA, Inc., the owner of the theater, and alleged that a lip on one of the stairs was an unreasonably dangerous condition that caused her to fall.

Before the court is Cinemark's Motion to Exclude Expert Testimony (Doc. 17) and Motion for Summary Judgment (Doc. 15). Cinemark attacks the admissibility of the opinion of Mrs. Brown's sole expert witness on liability and argues that—largely because the expert testimony should be excluded—it is entitled to summary judgment. For the reasons that follow, both motions will be denied.

**Relevant Facts**

Julie and Robert Brown attended some movies at the Shreveport Tinseltown theater over the years, but their afternoon trip in July 2017 to see "The House" starring Will Ferrell was their first visit since the theater made extensive renovations that added reclining seats

and other amenities. Mrs. Brown, who was born in 1967 and was in good health, was wearing shorts, t-shirt, and tennis shoes, clothing that would not interfere with her ability to walk. She and her husband entered the auditorium and walked up the stairs on their right side (when facing away from the screen) to their seats, which were a few rows up. Mr. Brown recalled at his deposition that, after they were seated, they discussed how much steeper the stairs were at this theater compared to the Boardwalk theater they usually patronized.

A few minutes into the trailers, Mrs. Brown decided to go to the restroom. She arose from her seat, walked to her left, and entered the same stairs that she walked up earlier. She placed her left hand on a railing and started to walk down the stairs. At some point, her left foot was planted on a lower stair, and when she began to move her right foot forward it caught on a "raised strip" or lip on one of the steps, causing her to fall a significant distance down the stairs and land on her right knee.

An off-duty policeman promptly called for EMTs, and he and Mr. Brown went to help Mrs. Brown. The policeman was concerned that she was going into shock, and he sent Mr. Brown to meet the EMTs at the entrance. The EMTs put Mrs. Brown on a stretcher. As they were carrying her out of the theater, a Tinseltown employee gave Mr. Brown two free passes, which caused one of the EMTs to say, "Really?" Mrs. Brown testified that she learned that her right tibial plateau was shattered, and she had fractures in her tibia and fibula.

Mr. Brown testified that he returned to the theater with his daughter about a week later to watch a Spiderman movie. While there, he asked an employee if he could enter the

auditorium where his wife fell and take some photos. The employee asked if she was the lady who fell the day before, which Mr. Brown took to suggest that more than one person had fallen recently in the theater. Mr. Brown took several photographs of the stairs, and they were admitted and discussed in detail at the depositions.

Mrs. Brown identified a "white strip" (depicted in Exhibit B3 to her deposition, and marked with a number 1) as the piece that caught her right foot and caused the fall. She described the strip as wooden or made of particle board, and said it was not flush with the carpet that covered the rest of the step. She said that the steps below where she tripped had a different construction or configuration; the one that caused her to trip was raised and did not have rubber stripping to make it flush. She did not know how much it was raised, and no one took any measurements as far as she knew.

Mr. Brown testified that he did not take any measurements of the lip or otherwise when he took the photographs. He said that he took the photos to show Mrs. Brown's physician, who said that he had never seen such significant damage from a fall. Mrs. Brown said that she fell the depth of at least two or three steps before her knee struck the floor, and Mr. Brown wanted the photos to demonstrate that distance to the physician.

Mrs. Brown testified, "The cause of the tripping was that the board is raised and just not flush." Mrs. Brown said that the Boardwalk theater she ordinarily attended had some rubber stripping on the stairs, and they were much wider and safer. She was asked whether the stripping situation at Tinseltown appeared to be associated with the recent remodeling. She said she did not know, but "it appeared to be remodeled by middle schoolers." Mrs. Brown said that her husband told her that when he took the photos, he could see "light

coming through" where the strip was raised. She pointed out that the photo marked Exhibit B6 appeared to show rubber stripping on the stairs below where she fell, but there was no such stripping on the step where she tripped.

Mrs. Brown retained Dennis R. Howard, Certified Safety Professional, to offer an opinion about the stairs on which she fell. Mr. Howard has been the president of Safety Management, Inc., based in North Carolina, since 1979. He has extensive experience in safety consultations, developing safety programs, and safety-related training. He holds a B.S. in industrial management from Florida State University, and he has extensive speaking and teaching experience related to safety issues, including the prevention of slips, trips, and falls.

Mr. Howard has not been deposed in this case, but he did tender an expert report. He stated in his report that he did not visit the scene of the accident or take any measurements. He did review the depositions of Mr. and Mrs. Brown, the photos attached to the depositions, and the petition for damages. In his description of the facts, he stated, "No specific measurement was taken to determine the stair nosing above the adjacent carpeted walking surface." He added, "I would like the opportunity to visit the site if possible."

Mr. Howard's "initial opinions" in the report included the observation that the theater's darkened path required using the greatest possible safety precautions and certainly compliance with the recommended ASTM Standard Practice for Safe Walking Surfaces. He opined that the failure to maintain a flushed surface or one that provided the utility of a beveled surface ran afoul of some safety code provisions that caused the stairs "to be

unreasonably dangerous and were causative for Mrs. Brown's injuries." He cited ASTM sections 5.2 and 5.3, which allow changes in levels up to one-quarter inch to be vertical and without edge treatment, but changes in levels between one-quarter inch and one-half inch must be beveled with a slope no greater than 1:2. He also cited Life Safety Code, Chapter 7, Means of Exit. Section 7.1.6.2 was said to require abrupt changes in elevation of walking surfaces to not exceed one-quarter inch, with beveling of edges between one-quarter inch and one-half inch. He also cited Section 7.2.2.3.3.2, which he said provides that stair treads and landings shall be free of projections or lips that could trip a stair user.

Cinemark retained architect Lauren F. Marchive, III, who holds bachelor's and master's degrees in architecture from Louisiana Tech University. Mr. Marchive testified in an affidavit that in November 2019 he inspected the premises where the incident took place in July 2017 (more than two years earlier) and reviewed Mrs. Brown's deposition and attached photos. His written report stated that he inspected, photographed, and took measurements of the area. He said the condition and appearance of the location at the time of his inspection appeared to be the same as shown in the photographs included in Mrs. Brown's deposition. After his inspection, plus a review of code requirements for the exit aisle in question, Mr. Marchive opined that "there are no physical deficiencies, and no code violations, associated with the in-place construction of the exit aisle stairs." It was his opinion that the condition of the stairs where the incident happened was not unreasonably dangerous.

Mr. Marchive also considered the opinion of Mr. Howard. He noted that Mr. Howard cited certain ASTM requirements. He said that one cited standard does not apply

inside a building, and it is primarily used for walking surfaces outside a building. He also opined that Mr. Howard's final conclusion "cannot be made without being on-site and inspecting the as-built conditions." Mr. Marchive specifically stated that he "measured the subject nosing strip height" and it "was within tolerances allowed by code." He added, "The nosing strip is required for safety."

**The Daubert Challenge**

    **A. Applicable Law**

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if his specialized knowledge will help the trier of fact understand the evidence or determine a fact at issue, the testimony is based on sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has reliably applied the principles and methods to the facts of the case.

The landmark Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1993) addressed the admissibility of scientific expert testimony under Rule 702. It discussed certain factors such as testing, peer review, error rates, and acceptability in the relevant scientific community as factors that might prove helpful in determining the reliability of a particular scientific theory or technique. The decision vested district courts with discretion to act as gatekeepers and permit only reliable and relevant expert testimony. Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999).

The Court clarified in Kumho Tire Co., Ltd. v. Carmichael, 119 S.Ct. 1167 (1999) that Daubert's general holding applies not only to testimony based on "scientific"

knowledge, but also to testimony based on technical and other specialized knowledge contemplated by Rule 702. Kumho explained that one or more of the scientific factors from Daubert might be helpful in determining the reliability of such a witness, but the test for reliability is flexible. The law grants the trial judge the same broad latitude in deciding how to determine reliability as is afforded with respect to the ultimate reliability determination.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." Puga v. RCX Solutions, Incorporated, 914 F.3d 976, 985 (5th Cir. 2019). While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, "the rejection of expert testimony is the exception rather than the rule." Id., quoting Fed. R. Evid. 702 Advisory Committee Notes (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 113 S.Ct. at 2798.

**B. Analysis**

Cinemark argues that Mr. Howard is not qualified to offer opinion testimony under Rule 702 because his opinion (1) is not based upon sufficient facts or data and (2) is not the product of reliable principles and methods. Each attack will be addressed in turn.

Cinemark first argues that Mr. Howard's opinion is not based upon sufficient facts or data because Mr. Howard did not conduct an actual in-person inspection. Mrs. Brown's response cites Deshotel v. Wal-Mart, 850 F.3d 742 (5th Cir. 2017), in which an expert was allowed to testify about the condition of a roof that he did not actually inspect. The Court

stated that "there is no requirement that an expert derive his opinion from 'firsthand knowledge or observation.'" Id. at 746. Deshotel cited Wellogix, 716 F.3d at 876, which held that a jury could reasonably credit an expert's testimony that was based purely on his industry experience and his review of a deposition. Judge Doughty cited both of those decisions in McConathy v. Wal-Mart Louisiana, LLC, 2018 WL 3901190 (W.D. La. 2018) when he denied a motion in limine that sought to exclude Mr. Howard's opinion in a similar trip and fall case. Cinemark somewhat conceded this point when it allowed in its reply memorandum that, "While an inspection is not required, sufficient facts are."

Mr. Howard did not personally observe or measure the stairs at issue, but that is not required. He had the benefit of photographs and fairly specific testimony from Mr. and Mrs. Brown about the conditions at the time of the fall. That factual information, together with his education and experience, provided a basis for his opinion. The court finds that Cinemark's attack on Howard's opinion for not being based upon sufficient facts or data is not enough to exclude Howard's testimony from the trial. Cinemark will be able to cross-examine Mr. Howard on these issues.

Cinemark next attacks Mr. Howard's testimony on the grounds that he referred to an ASTM standard that Mr. Marchive states applies to surfaces outside rather than inside a building. The particular standard at issue does not appear to be in the record, so the extent to which it is limited to outdoor surfaces cannot be determined with certainty. It may be inapplicable to the inside area, or it could be grounds for debate among the experts. The current record does not allow the non-expert court to make the determination. Furthermore,

Mr. Howard cited other safety standards, including a general requirement that stair treads and landings be free of projections or lips that could trip a stair user.

Cinemark has pointed to another potential flaw in Mr. Howard's opinion that gives them a basis for cross-examination. But the court does not find that the debate over the applicable safety standards warrants excluding his testimony altogether.

### C. Conclusion

Mr. Howard has extensive credentials in the field, and he had the benefit of photographs and testimony of eyewitnesses (which is as much as a judge or jury often receives before being asked to decide the merits). With respect to the safety standards, the court is not persuaded that the current record warrants the exclusion of Howard's opinion based on the alleged application of one inapplicable standard. Counsel and the experts can explore and debate the various safety standards at trial. Cinemark's Daubert challenge to exclude Mr. Howard's testimony will be denied.

**Motion for Summary Judgment**

Under Louisiana's merchant liability statute, a merchant owes a duty to all persons who use its premises "to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition." La. R.S. 9:2800.6(A). To impose liability on a merchant under the statute, the claimant has the burden of proving elements that include the presence of a condition that presented an unreasonable risk of harm to the claimant. La. R.S. 9:2800.6(B). There is also a general provision in Civil Code art. 2317.1 that the owner or custodian of a thing is answerable for damage caused by its ruin, vice, or defect, if it is shown that the owner knew or, in the exercise of reasonable care, should have known of

the ruin, vice, or defect that caused the damage, the damage could have been prevented by the exercise of reasonable care, and the owner or custodian failed to exercise such care.

Cinemark argues that is entitled to summary judgment because Mrs. Brown cannot present evidence that the stairs possessed a defect or condition that presented an unreasonable risk of harm. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

Cinemark first argues Mrs. Brown cannot prove that the premises presented an unreasonably dangerous condition without the testimony of her expert, which Cinemark urges should be excluded. The court found above that Mr. Howard should be able to testify for Mrs. Brown, which lends her some evidence on this issue. And not every case requires an expert witness to establish liability. Some matters are straightforward enough that a

jury can make decide liability without an expert in the subject matter to guide them. Alfred Conhagen, Inc. of Louisiana v. Ruhrpumpen, Inc., 262 So.3d 306, 310 (La. App. 4th Cir. 2018) ("[a] layperson … is well-equipped to gauge the evidence and determine whether [an engineer] fell below a common sense standard of care"), citing Pfiffner v. Correa, 643 So.2d 1228, 1233-34 (La. 1994) ("expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim") and Milton J. Womack, Inc. v. House of Representatives of State, 509 So.2d 62 (La. App. 1st Cir. 1987) ("testimony from an expert is not always necessary to establish the negligence of an architect"). Cinemark has not cited Louisiana law that would mandate expert testimony to prove that a protruding lip on a step in a dark theater is unreasonably dangerous.

Cinemark also argues that the stairs cannot be unreasonably dangerous because Mr. Marchive found that they satisfied code requirements. But his opinion, based on conditions he observed more than two years after the accident, does not necessarily preclude a finding that the step was unreasonably dangerous at the time of the accident. It is quite possible that, in the intervening two years, foot traffic, maintenance, or corrective measures could have altered the condition of the particular step at issue.

Furthermore, code compliance does not exonerate an owner from fault. "Compliance with building codes is only one factor to consider in determining a landowner's liability." Nugent v. Car Town of Monroe, Inc., 206 So.3d 369, 375–76 (La. App. 2d Cir. 2016), citing Calcagno v. Kuebel, Fuchs Partnership, 802 So.2d 746, 751 (La. App. 5th Cir. 2001) (faded paint on curb in front of hall created unreasonably dangerous

condition even though no building codes were violated). Conversely, a violation of a safety code or regulation does not automatically make the owner liable. "Louisiana law is clear that "[w]hile statutory violations are not in and of themselves definitive of civil liability, they may be guidelines for the court in determining standards of negligence by which civil liability is determined." Jones v. Buck Kreihs Marine Repair, L.L.C., 122 So.3d 1181, 1187 (La. App. 4th Cir. 2013), quoting Smolinski v. Taulli, 276 So.2d 286, 289 (La. 1973).

The condition of the area at the relevant time and its risk of danger is a material fact on which Mrs. Brown has created a genuine dispute. A jury will be entitled to weigh the testimony of the Browns, assess the relative strengths and weaknesses of the expert opinions, and determine whether the step was unreasonably dangerous at the time of the accident. Cinemark is not entitled to summary judgment.

**Conclusion**

Cinemark's **Motion to Exclude Expert Testimony (Doc. 17)** is **denied**, and Mr. Howard will be allowed to testify and offer his opinion. Cinemark's **Motion for Summary Judgment (Doc. 15)** is also **denied**, given the genuine dispute in the evidence as to whether the step at issue was unreasonably dangerous at the time of the accident. The case is set for jury trial on August 17, 2020. If the parties are able to settle the dispute before then, they should promptly advise the court and request entry of a 90-day order of dismissal that will relieve them of their scheduling order deadlines and allow time to finalize the settlement.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of June, 2020.

Mark L. Hornsby
U.S. Magistrate Judge